UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00782-TBR

BRIAN E. FINGERSON, Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*, Defendants.

## MEMORANDUM OPINION

Brian E. Fingerson filed this action against the U.S. Department of Homeland Security and U.S. Citizenship and Immigration Services,[1] challenging USCIS's denial of the Form I-130, Petition for Alien Relative, he filed on behalf of Banele Gumede, his putative adopted son. USCIS erred, Fingerson argues, because the regulation upon which it relied to deny his petition, 8 C.F.R. § 204.2(d)(2)(vii), conflicts with 8 U.S.C. § 1101(b)(1). He seeks declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Department asks the Court to dismiss Fingerson's suit in its entirety. Because USCIS's regulations reasonably construe 8 U.S.C. § 1101(b)(1), the Department's Motion to Dismiss, R. 13, is **GRANTED**.

### I.

#### A.

Banele Gumede is a native and citizen of South Africa. R. 1 at 2–3, ¶ 4 (Complaint). In July 2009, at the age of fifteen, Gumede entered the United States on a

---

[1] In detail, Brian E. Fingerson sued the following persons in their official capacities: Jeh Johnson, Secretary of the U.S. Department of Homeland Security; Leon Rodriguez, Director of U.S. Citizenship and Immigration Services; and Larry B. Kammerer, Director of the USCIS Field Office in Louisville, Kentucky. R. 1 at 3–4, ¶¶ 5–7 (Complaint).

1

nonimmigrant student visa. *Id.* at 2–4, ¶¶ 4, 8. The Fingersons served as Gumede's host family and legal guardians. *Id.* at 4–5, ¶ 10. Gumede was to remain in the United States for one year before returning home to South Africa. *Id.* at 5, ¶ 11.

Sometime in 2010, however, Gumede learned that his mother's health had seriously deteriorated. *Id.* at 5–6, ¶ 12.[2] According to Brian E. Fingerson, Gumede's mother asked that the Fingerson family care for Gumede because none of his relatives in South Africa were suitable guardians. *Id.*, ¶¶ 12–13. To that end, Fingerson claims, Gumede's mother relinquished her parental rights. *Id.* at 6, ¶ 13. On September 23, 2010, a Kentucky court entered a putative adoption order. *Id.*

Subsequently, in August 2011, Fingerson filed a Form I-130, Petition for Alien Relative, on Gumede's behalf listing Gumede as his adopted son. *Id.*, ¶ 14. In February 2012, U.S. Citizenship and Immigration Services issued a Notice of Intent to Deny the Petition. *Id.* at 7, ¶ 16. USCIS determined that because Gumede was a South African citizen, his adoption must comply with the Hague Convention on Protection of Children and Cooperation in Respect of Intercountry Adoption and its implementing legislation. *See* R. 1-4 at 4–5 (USCIS Decision).[3] Concluding that Fingerson had not done so, USCIS denied the petition in March 2013. *Id.* at 5; *see also* R. 1 at 7–8, ¶¶ 17–18. The Board of Immigration Appeals affirmed. *See* R. 1-5 at 2–3 (BIA Decision); *see also* R. 1 at 8, ¶ 19.

---

[2] Gumede never knew his father. *Id.* at 5–6, ¶ 12.

[3] In reviewing the Department's motion to dismiss, the Court may consider not only the complaint, but also any attached exhibits, provided those exhibits are central to the claims contained in the complaint. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015), *petition for cert. filed*, No. 15-1419 (U.S. May 19, 2016).

2

**B.**

On November 24, 2014, Fingerson filed this action against the Department and USCIS, challenging USCIS's denial of the Form I-130, Petition for Alien Relative, he filed on behalf of Gumede. R. 1 at 1–4, ¶¶ 1, 5–7. He seeks declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702. *Id.* at 1–2, ¶ 1. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Department asks the Court to dismiss Fingerson's suit in its entirety. *See* R. 13 at 1 (Motion to Dismiss).

**II.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

**III.**

Ultimately, Fingerson challenges USCIS's determination that he must petition to classify Gumede as his "child" under 8 U.S.C. § 1101(b)(1)(G) rather than 8 U.S.C. § 1101(b)(1)(E). *See* R. 14 at 3–6 (Response); *see also* R. 1 at 16–17, ¶¶ 34–37. To understand the nuances of Fingerson's argument, though, it is necessary to briefly discuss the nation's immigration law scheme.

**A.**

The Immigration and Nationality Act affords preferential immigration status to an alien who is an "immediate relative" of a United States citizen. *See* 8 U.S.C. § 1154(b). The Act allows a United States citizen to petition to confer status as an immediate relative to his or her "child." *See id.* § 1154(a)(1)(A)(i) (right to petition); *see also id.* § 1151(b)(2)(A)(i) (definition of "immediate relative"). Until 1999, the Immigration and Nationality Act contained only two definitions of "child" related to adopted children. First, section 101(b)(1)(E) defined "child" as a person "adopted while under the age of sixteen years if the child has been in legal custody of, and has resided with, the adopting parent or parents for at least two years." *Id.* § 1101(b)(1)(E)(i). Second, section 101(b)(1)(F) broadened the definition of "child" by eliminating the custody and residency requirement if the child qualified as an "orphan" under the Act. *Id.* § 1101(b)(1)(F)(i).

In 2000, however, the Senate acceded to the Convention on Protection of Children and Cooperation in Respect of Intercountry Adoption, *opened for signature* May 29, 1993, S. Treaty Doc. No. 105-51 (1998), 1870 U.N.T.S. 182 (entered into force May 1, 1995). *See* S. Res. of Advice and Consent, 106th Cong., 146 Cong. Rec. S8866–67 (daily ed. Sept. 20, 2000). The Convention proposes to establish "safeguards" and a

"system of cooperation" and mutual "recognition" for intercountry adoptions—all with an eye towards preventing "the abduction, the sale of, or traffic in children." Convention on Protection of Children and Cooperation in Respect of Intercountry Adoption, art. 1, ¶ 1. By its terms, the Convention applies

> where a child habitually resident in one Contracting State ("the State of origin") has been, is being, or is to be moved to another Contracting State ("the receiving State") either after his or her adoption in the State of origin by spouses of a person habitually resident in the receiving State, or for the purposes of such an adoption in the receiving State or in the State of origin.

*Id.* art. 2, ¶ 1.[4] The Convention mandates that signatories establish basic requirements for all intercountry adoptions, such as ascertaining that the child is adoptable, that the child's parents or guardians voluntarily consented to the adoption, and that the prospective adoptive parents are suitable guardians. *Id.* arts. 4–5. In addition, it requires each signatory to designate a "central authority" responsible for certifying that an intercountry adoption satisfies the Convention's requirements. *Id.* arts. 6, 15–21.

While the Convention is a binding international agreement, it is not self-executing. *See* S. Res. of Advice and Consent; *see also* S. Exec. Doc. No. 106-14, at 10–11 (2000). "That is, the Convention creates obligations only for State Parties and 'does not by itself give rise to domestically enforceable federal law' absent 'implementing legislation passed by Congress.'" *Bond v. United States*, ––– U.S. –––, –––, 134 S. Ct. 2077, 2084 (2014) (plurality) (quoting *Medellin v. Texas*, 552 U.S. 491, 505 n.2 (2008)).

---

[4] The Senate Committee on Foreign Relations summarized this provision as follows: "[The Convention] covers cases in which (1) a child habitually resident in one Contracting State ('the State of origin') goes to another Contracting State ('the receiving State') either after adoption in the State of origin by a habitual resident of the receiving State or before adoption in the receiving State, and (2) a permanent parent-child relationship is created." S. Exec. Doc. No. 106-14, at 3 (2000).

Instead, it leaves the "details of its implementation up to each Contracting State." S. Treaty Doc. No. 105-51, at iii.

To implement the United States' treaty obligations, Congress passed the Intercountry Adoption Act of 2000, Pub. L. No. 106-279, 114 Stat. 825. *See* 42 U.S.C. § 14901(b)(1). Section 302(a) of that Act added a third definition of "child" to the Immigration and Nationality Act. Tracking the language of article 2 of the Convention, it defined "child" as a person

> younger than 16 years of age at the time a petition is filed on the child's behalf to accord a classification as an immediate relative under [8 U.S.C. § 1151(b)], who has been adopted in a foreign state that is a party to the Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption, . . . or who is emigrating from such a foreign state to be adopted in the United States.

8 U.S.C. § 1101(b)(1)(G)(i).[5] However, Congress said that most of the Act (including the addition of the third definition of child) would not take effect until the Convention entered into force in the United States. 42 U.S.C. § 14901 note. The Convention would not enter into force, in turn, until the U.S. Department of State and USCIS promulgated all necessary implementing regulations. *See* S. Res. of Advice and Consent.

In 2007, USCIS promulgated an interim rule to implement the provisions of the Intercountry Adoption Act. *See* Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention, 72 Fed. Reg. 56,832 (Oct. 4, 2007) (codified at 8 C.F.R. pts. 103, 204, 213a, 299, and 322). The Convention itself took effect on April 1, 2008. *See* Deposit of Instrument of Ratification by the United States of the Hague Convention on Protection of Children and Co-

---

[5] In 2010, Congress passed the International Adoption Simplification Act, Pub. L. No. 111-287, § 3, 124 Stat. 3058, 3058–59 (2010) (codified at 8 U.S.C. § 1101(b)(1)(G)(i)–(iii)), which amended the definition to its current form.

operation in Respect of Intercountry Adoption, 72 Fed. Reg. 71,730 (Dec. 18, 2007). The interim rule explains the relationship between the longstanding definition of child codified at 8 U.S.C. § 1101(b)(1)(E) and the new definition of child codified at 8 U.S.C. § 1101(b)(1)(G). *See* Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention, 72 Fed. Reg. at 56,832–35.

To be classified as the "child" of a United States citizen under § 1101(b)(1)(E), the child must meet certain age, custody, and residence requirements. *See* 8 C.F.R. § 204.2(d)(2)(vii). A child is ineligible for classification under § 1101(b)(1)(E), however, if he was habitually resident in a Convention country prior to the adoption. *See id.* § 204.2(d)(2)(vii)(F). Instead, the adopting parents must petition to classify the child as a "Convention adoptee" under § 1101(b)(1)(G). *See id.* A child is eligible for classification as a Convention adoptee when the child is habitually resident in a Convention country, and the adopting parents are habitually resident in the United States. *See id.* § 204.300(a); *see also id.* § 204.301 (defining Convention adoptee and Convention adoption). Although subject to a limited exception,[6] a child is deemed "to be habitually resident in the country of the child's citizenship" and will "not be considered to be habitually resident in any country to which the child travels temporarily." *Id.* § 204.303(b); *see also id.* § 204.303(a)(1) (presuming a United States citizen "to be habitually resident in the United States" if he or she has a domicile in the United States).

---

[6] "If the child's actual residence is outside the country of the child's citizenship, the child will be deemed habitually resident in that other country, rather than in the country of citizenship, if the Central Authority . . . has determined that the child's status in that country is sufficiently stable for that country properly to exercise jurisdiction over the child's adoption or custody. This determination must be made by the Central Authority itself . . . ." 8 C.F.R. § 204.303(b).

**B.**

Keeping that statutory and regulatory background in mind, the Court turns to the merits. Fingerson challenges USCIS's determination that he must petition to classify Gumede as his "child" under 8 U.S.C. § 1101(b)(1)(G) rather than 8 U.S.C. § 1101(b)(1)(E). His argument goes something like this: Under the plain language of § 1101(b)(1)(G), Gumede was not "emigrating from [a Convention country] *to be adopted* in the United States" at the time he arrived here on a nonimmigrant student visa.[7] The only proper classification for Gumede, then, is as a "child" under § 1101(b)(1)(E), the longstanding and general definition. USCIS's regulations make Gumede ineligible for classification under § 1101(b)(1)(E), though, because he was habitually resident in a Convention country prior to arriving in the United States. *See* 8 C.F.R. § 204.2(d)(2)(vii)(F). Fingerson argues that those regulations impermissibly broaden the reach of § 1101(b)(1)(G) to aliens, such as Gumede, who, although emigrating from a Convention country, arrived in the United States for purposes unrelated to adoption. *See* R. 14 at 3–6; R. 1 at 13–17, ¶¶ 28–37.

Though not without some appeal, the Court finds Fingerson's argument unpersuasive. To determine if an administrative agency's regulation is valid, this Court applies the familiar two-step analysis announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525 (9th Cir. 2012) (en banc) (citing *Mejia v. Gonzales*, 499 F.3d 991, 996 (9th Cir. 2007)); *Chem. Mfrs. Ass'n v. EPA*, 919 F.2d 158, 162–65 (D.C. Cir. 1990); *Econo Inn Corp. v. Rosenberg*, 145 F. Supp. 3d 708, 712 (E.D. Mich. 2015); *see also*

---

[7] It is undisputed that Gumede was not "adopted in a foreign state," as that phrase is used in 8 U.S.C. § 1101(b)(1)(G).

*Encino Motorcars, LLC v. Navarro*, —— U.S. ——, ——, 2016 WL 3369424, at *6 (2016).[8] The Court first looks to "the statute upon which the regulation is based." *Hachem v. Holder*, 656 F.3d 430, 438 (6th Cir. 2011). "If 'Congress has directly spoken to the precise question at issue,' then that is the end of the inquiry," and the expressed intent of Congress controls. *Id.* (quoting *Chevron*, 467 U.S. at 842–43). "However, 'if the statute is silent or ambiguous with respect to the specific issue,'" the Court must "decide 'whether the agency's answer is based on a permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 843). "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Robert v. Reno*, 25 F. App'x 378, 382 (6th Cir. 2002) (alteration in original) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)).

Here, Congress has not spoken directly as to whether a child from a Convention country who enters the United States as a nonimmigrant may be eligible for classification under § 1101(b)(1)(E) instead of § 1101(b)(1)(G). It appears as if Congress had not directly contemplated such a situation. The Court's extensive examination of the language and history behind the Intercountry Adoption Act underscores that conclusion. Therefore, the Court finds § 1101(b)(1) to be ambiguous.

The question becomes, then, whether USCIS's interpretation is based on a permissible construction of § 1101(b)(1). "A review of the legislative history as well as the language of the provision at issue is the chief method" by which the Court approaches *Chevron*'s second step. *All. for Cmty. Media v. FCC*, 529 F.3d 763, 778 (6th Cir. 2008)

---

[8] Fingerson concedes that *Chevron* sets forth the controlling standard to determine the validity of USCIS's regulations. *See* R. 1 at 14, ¶ 29.

(citing *Difford v. Sec'y of Health & Human Servs.*, 910 F.2d 1316, 1318 (6th Cir. 1990)). Having done just that, it appears as though USCIS's construction of § 1101(b)(1)(E) and § 1101(b)(1)(G) is reasonable.

In the words of Congress, the Convention "is designed to establish a[n] international legal framework for ensuring that intercountry adoptions follow standard procedures and provide sufficient protections to adoptive parents and children." S. Rep. No. 106-276, at 1–2 (2000). It creates "a mechanism for the cooperation of signatory countries in the areas of international adoption," and "ensures the recognition of adoptions undertaken and certified through the Convention provisions." S. Exec. Doc. No. 106-14, at 2. By tying (though not without exception) the scope of § 1101(b)(1)(G) to the adoptive child's *status* as a foreign national rather than to his temporary geographic *location*, *see* 8 C.F.R. § 204.303(b), USCIS's regulations, including 8 C.F.R. § 204.2(d)(2)(vii), promote Congress's goals in at least two ways. First, such an approach avoids the potential foreign relations consequences if a citizen were to adopt a foreign national temporarily in the United States without the country of origin's consent. *See* Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention, 72 Fed. Reg. at 56,848–49; R. 15 at 2 (Reply). Second, USCIS's interpretation encourages uniform application and guards against possible avoidance of the Convention's safeguards by looking to the child's citizenship rather than to the happenstance of child's temporary location. *See* Classification of Aliens as Children of United States Citizens Based on Intercountry Adoptions Under the Hague Convention, 72 Fed. Reg. at 56,840; R. 13-1 at 6 (Memorandum in Support).

USCIS's interpretation of § 1101(b)(1)(E) and § 1101(b)(1)(G) is not beyond the pale of reason.

## C.

In summary, the Court finds § 1101(b)(1) to be ambiguous: Congress has not spoken directly as to whether a child from a Convention country who enters the United States as a nonimmigrant may be eligible for classification under § 1101(b)(1)(E) instead of § 1101(b)(1)(G). USCIS's regulations not only provide an *answer* to that question, but also provide a *reasonable* one. Therefore, USCIS committed no error by relying on 8 C.F.R. § 204.2(d)(2)(vii) to deny Fingerson's Form I-130, Petition for Alien Relative.

Having made this determination, the Court is not unsympathetic to Fingerson's argument or desired result. On the face of the pleadings, it certainly appears that denial of his petition avoids the good faith intent of Gumede, his family, and the Fingersons. Nevertheless, the Court feels it is legally compelled to reach the result it has.

## VI.

The Department of Homeland Security's Motion to Dismiss, R. 13, is **GRANTED**. An appropriate order shall issue separate from this Memorandum Opinion.

Date:
cc:     Counsel of Record